## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

| | |
|---|---|
| Lina Posada; Andra "Ana" Cheri Moreland; and Rosa Acosta,<br><br>    Plaintiffs,<br><br>    v.<br><br>Parker Promotions, Inc. d/b/a Club Fetish and Nicholas Parker,<br><br>    Defendants. | Case No. |

Plaintiffs Lina Posada; Andra "Ana" Cheri Moreland; Rosa Acosta (collectively, "Plaintiffs"), file this Complaint against Parker Promotions, Inc. d/b/a Club Fetish and Nicholas Parker (collectively "Defendants"), and respectfully allege as follows:

### BACKGROUND

1.    This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, Club Fetish, located in Columbus, Georgia ("Club Fetish" or the "Club").

2.    As detailed below, Defendants' misappropriation and unauthorized use

of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of publicity; c) violation of each Plaintiff's common law right of privacy; d) violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.*; e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendant Parker Promotions, Inc. is a corporation formed under the laws of the state of Georgia, with its principal

place of business located at 3444 Miles Street, Columbus, Georgia, 31906. Defendant Parker Promotions, Inc., operates Club Fetish, which is located at 4504 Armour Road #14, Columbus, Georgia 31904.

8.      Venue is proper in the United States District Court for the Middle District of Georgia because Defendants' principal place of business is located in Columbus, Georgia.

9.      A significant portion of the alleged causes of action arose and accrued in Columbus, Georgia and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Columbus, Georgia.

## PARTIES

*Plaintiffs*

10.      Plaintiff Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

11.      Plaintiff Andra "Ana" Cheri Moreland ("Moreland") is a well-known professional model, and a resident of Orange County, California.

12.      Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

13.      Defendant Parker Promotions, Inc., is a domestic profit corporation

formed under the laws of the state of Georgia and registered to conduct business in Georgia. At all times relevant to this action, Defendant Parker Promotions, Inc., operated Club Fetish in Columbus, Georgia.

14.    Service of process may be perfected upon Defendant Parker Promotions, Inc., by serving the registered agent for service of process, Nicholas Parker, at 3444 Miles Street, Columbus, Georgia, 31906.

15.    Defendant Nicholas Parker is an individual resident of the State of Georgia, and is listed as the CEO, CFO, and Secretary of Defendant Parker Promotions, Inc. Service of process may be perfected upon Defendant Nicholas Parker by serving him at 3444 Miles Street, Columbus, Georgia, 31906, or anywhere else that he may be found in the state.

## FACTUAL ALLEGATIONS

16.    Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines, and individuals for the purpose of advertising products and services.

17.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

18.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

19.     In the case of each Plaintiff, this apparent claim was false.

20.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

21.     No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

22.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

23.     Plaintiff Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Besame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swinwear, Ujeans, as well as many others. She currently has 95.1 thousand Instagram followers, 2.99 thousand YouTube subscribers, 8,931 Facebook

followers, and over 5.6 thousand Twitter followers.

24.    That we know of, Posada is depicted in the photos in Exhibit "A" to promote Club Fetish on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Posada was either a stripper working at Club Fetish, that she endorsed Club Fetish, or that she was otherwise associated or affiliated with Club Fetish.

25.    Posada has never been employed at Club Fetish, has never been hired to endorse Club Fetish, has never been otherwise associated or affiliated with Club Fetish, has received no remuneration for Defendants' unauthorized use of their Images, and have suffered, and will continue to suffer, damages as a result of same.

26.    Plaintiff Moreland is a published model with companies such as Monster Energy, K&N Filters, Moskova Underwear and Ultimate Armwrestling League. She became a brand ambassador for Shredz. She was featured as a *Maxim* Instagram Girl of the Week, and was also *Playboy's* October 2015 Playmate of the Month. She has made appearances in numerous TV series, including Booty Boot Camp, Nuclear Family, Playmate Playback and many more. She is also the owner of Cheri Fit activewear. Cheri currently has over 12.5 million followers on Instagram, over 15.5 thousand followers on Twitter, and over 6.2 million followers on Facebook.

27.    That we know of, Moreland is depicted in the photos in Exhibit "B" to

promote Club Fetish on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Moreland was either a stripper working at Club Fetish, that she endorsed Club Fetish, or that she was otherwise associated or affiliated with Club Fetish.

28.     Moreland has never been employed at Club Fetish, has never been hired to endorse Club Fetish, has never been otherwise associated or affiliated with Club Fetish, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

29.     Plaintiff Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a Bachelor in Art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she is nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines,

radio, television programs and commercials and numerous music videos. She has over 36 thousand Facebook followers, over 1.6 million Instagram followers, and over 291 thousand Twitter followers.

30.     That we know of, Acosta is depicted in the photos in Exhibit "C" to promote Club Fetish on its Instagram page. This Image was intentionally altered to make it appear that Acosta was either a stripper working at Club Fetish, that she endorsed Club Fetish, or that she was otherwise associated or affiliated with Club Fetish.

31.     Acosta has never been employed at Club Fetish, has never been hired to endorse Club Fetish, has never been otherwise associated or affiliated with Club Fetish, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

32.     Defendants operate or operated, during the relevant time period, Club Fetish, where they are or were engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

33.     In furtherance of their promotion of Club Fetish, Defendants own, operate, and control Club Fetish's social media accounts, including its Facebook, Twitter, and Instagram accounts.

34.     Defendants used Club Fetish's Facebook, Twitter, and Instagram

accounts to promote Club Fetish, and to attract patrons.

35. Defendants did this for their own commercial and financial benefit.

36. Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Club Fetish, endorsed Club Fetish, or was otherwise associated or affiliated with Club Fetish.

37. Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Club Fetish to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

38. Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Club Fetish, and at no point have any of the Plaintiffs ever endorsed Club Fetish, or otherwise been affiliated or associated with Club Fetish

39. All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

40. Defendants have never compensated Plaintiffs for the unauthorized use

of Plaintiffs' Images.

41.    Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

### Standard Business Practices in the Modeling Industry

42.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

43.    The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

44.    Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

### Defendant's Misappropriation of Plaintiffs' Images

45.    Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Club Fetish.

46.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

47.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Club Fetish.

48.     At no point was any Plaintiff ever contacted by any Defendants, or any representative of any Defendants, to request the use of any of Plaintiffs' Images.

49.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

50.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Club Fetish's website, Twitter, Facebook, or Instagram accounts.

51.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## FIRST CAUSE OF ACTION
### (Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)

52.     The advertisements at issue in this action were false and misleading under 15 U.S.C. § 1125(a)(1)(B) because no Plaintiff ever worked at or was in any

way associated or affiliated with Club Fetish, nor had they agreed to appear in Club Fetish's advertisements.

53.    Given the false and misleading nature of the advertisements, they had the capacity to and did deceive consumers.

54.    Upon information and belief, the deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Club Fetish.

55.    Defendants' publication of these false and misleading advertisements on the internet had the capacity to and did affect interstate commerce.

56.    Even though Defendants were at all times aware that the Plaintiffs neither worked at nor endorsed Club Fetish, Defendants nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiff's employment at or affiliation with Club Fetish.

57.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Club Fetish.

58.    Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Club Fetish, and the goods and services provided by Club Fetish.

59.    Defendants' unauthorized use of Plaintiffs' Images created a false advertisement prohibited by section 43 of the Lanham Act, and Plaintiffs have been

damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SECOND CAUSE OF ACTION
### (Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)

60.    Defendants' use of Plaintiffs Images created the false impression with the public that Plaintiffs were affiliated, connected, or associated with Club Fetish, or worked at, sponsored, or approved of Club Fetish's goods, services or commercial activities.

61.    This was done to promote and attract clientele to Club Fetish, and thereby generate revenue for the Defendants, for Defendants' commercial benefit.

62.    Even though Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Club Fetish, nor worked at, sponsored, or approved of Club Fetish's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiffs' employment at or affiliation with Club Fetish.

63.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at Club Fetish.

64.    Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' employment at or endorsement of Club Fetish, and the goods and services

provided by Club Fetish.

65.     Defendants' unauthorized use of Plaintiffs' Images created a false endorsement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**THIRD CAUSE OF ACTION**
**(Common Law Right of Publicity)**

66.     Defendants have appropriated each Plaintiff's likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

67.      Defendants misappropriated Plaintiffs' likenesses by publishing their Images on Club Fetish's website or related social media accounts as part of Defendants' advertising campaign.

68.     Club Fetish's website and social media accounts were designed to advertise and attract business to Club Fetish and generate revenue for Defendants.

69.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

70.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on

various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

71.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

72.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Club Fetish.

73.     At no point did any Defendant ever seek or receive permission or consent to use any Plaintiff's Image for any purpose.

74.     Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

75.     At no point did Defendants ever compensate Plaintiffs for its unauthorized use of their Images.

76.     Plaintiffs have been damaged in amounts to be proved at trial and are also entitled to punitive damages under O.C.G.A. § 51-12-5.1 based on Defendants' actions.

### **FOURTH CAUSE OF ACTION**
### **(Common Law Right of Privacy – False Light)**

77.     As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona

and likeness.

78.     Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

79.     As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Fetish advertising.

80.     Defendants did so without any Plaintiff's consent, written or otherwise.

81.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

82.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

83.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Club Fetish.

84.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

85.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## FIFTH CAUSE OF ACTION

## (Violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.*)

86.     Defendants operated Club Fetish's website and social media accounts in order to promote Club Fetish, to attract clientele thereto, and to thereby generate revenue for Defendants.

87.     As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Georgia.

88.     Defendants' published Plaintiffs' Images on Club Fetish's website and social media accounts in order to create the false impression that Plaintiffs were either strippers working at Club Fetish, endorsed Club Fetish, or were otherwise affiliated, associated, or connected with Club Fetish.

89.     As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

90.     Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Georgia law.

91.     Defendants' advertising practices offends the public policy of Georgia insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendants commercial benefit.

92.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at Club Fetish.

93.    Defendants' advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with, Club Fetish.

94.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants own commercial interests.

95.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on Club Fetish's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

96.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Defamation)

97.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote Club Fetish to the general public and potential clientele.

98.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by Club Fetish, that they endorsed Club Fetish, or that they had some affiliation with Club Fetish.

99.    None of these representations were true.

100.   In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at Club Fetish or endorsed Club Fetish.

101.   Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by Club Fetish, had no affiliation with Club Fetish, had not consented to the use of their Images, and had not been compensated for the use of their Images.

102.   In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by Club Fetish, had no affiliation with Club Fetish, had not consented to the use of their Images, and had not been compensated for the use of their Images.

103.   Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

104.   Defendants' publication of Plaintiffs' Images constitutes defamation under Georgia law because said publication falsely accuses Plaintiff of having acted

in a manner—*i.e.*, working as a stripper and/or endorsing a strip club—which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

105.   Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Georgia law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

106.   This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

107.   Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Georgia law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

108.   Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

109.   Plaintiffs are further informed and believe and hereon allege that

Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

110.   Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

111.   Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

112.   Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

113.   Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

114.   Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and Illinois law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

115.   Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

116.   As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

117.   Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

118.   By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

119.   As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

120.   As set forth in detail above, Defendants published Plaintiffs' Images in order to promote Club Fetish to the general public and potential clientele.

121.   Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at Club Fetish or endorsed Club Fetish.

122.   Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

123.   Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

124.   Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to Club Fetish.

125.   Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

126.   As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

127.   Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

128.   Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

129.   Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Club Fetish, endorse Club Fetish, or are otherwise affiliated with Club Fetish, Defendant have not compensated Plaintiffs.

130.   Plaintiffs are therefore entitled to reasonable compensation for Club Fetish's unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(b) For an order ***permanently enjoining*** Defendants from using Plaintiffs' Images to promote Club Fetish;

(c) For punitive damages and treble damages under O.C.G.A. §§ 51-12-5.1 and the Lanham Act, 15 U.S.C. § 1117;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and O.C.G.A. § 10-1-373; and,

(e) For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 10th day of August, 2022.

/s/ John V. Golaszewski
John V. Golaszewski*
New York Bar No. 4121091
**THE CASAS LAW FIRM, P.C.**
1740 Broadway, 15th Floor
New York, New York 10019
(646) 872-3178
john@casaslawfirm.com

*Pro Hac Vice Application Pending*

Attorneys for Plaintiffs

/s/ Bret Moore
Bret Moore
Georgia Bar No. 601608
**POOLE HUFFMAN, LLC**
3562 Habersham at Northlake
Building J, Suite 200
Tucker, GA 30084
(404) 373-4008
(888) 709-5723 fax
bret@poolehuffman.com

Attorneys for Plaintiffs